### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

**MICHAEL H. PIROTTE, individually and as Special Administrator of the Estate of Rosaire B. Pirotte,**

    **Plaintiff,**

**v.**

**HCP PRAIRIE VILLAGE KS OPCO LLC, et al.,**

    **Defendants.**

       **Case No. 21-2346-DDC-KGG**

### MEMORANDUM AND ORDER

Before the court is plaintiff Michael H. Pirotte's Motion to Remand (Doc. 22). Plaintiff argues that his Kansas state law claims—which defendants removed to our court—belong in state court because our court lacks subject-matter jurisdiction over those claims. In contrast, defendants argue that the claims belong in federal court because a federal law—the Public Readiness and Emergency Preparedness Act (PREP Act)—completely preempts plaintiff's claims, thus providing our court with subject matter jurisdiction over those claims. For reasons explained below, the court grants plaintiff's motion and remands the case to state court because this court lacks subject matter jurisdiction. And, because the court lacks subject matter jurisdiction, the court dismisses defendants' Motion to Dismiss (Doc. 6).

### I.  Background

Rosaire B. Pirotte lived at Brighton Garden of Prairie Village, a residential health care facility. Doc. 1-1 at 4–5 (Pet. ¶¶ 1, 13). Ms. Pirotte lived at Brighton Gardens "because she was incapable of caring for herself." *Id.* at 12 (Pet. ¶ 44). She "relied upon Defendants to provide for

her health, safety, protection, protective oversight, and to provide food and water." *Id.* at 13 (Pet. ¶ 52).

Plaintiff alleges that "Brighton Gardens knew or should have known the vital importance of ensuring COVID-19 did not enter or spread in its facility." *Id.* at 12 (Pet. ¶ 48). Specifically, plaintiff alleges Brighton Gardens should have "monitor[ed] both residents and staff for fever, cough, and other symptoms of COVID-19, adher[ed] to social distancing guidelines, maintain[ed] infection control procedures, and maintain[ed] other sanitary procedures to prevent the spread of COVID-19[.]" *Id.* at 12–13 (Pet. ¶ 48).

In early April 2020, Brighton Gardens confirmed its first positive cases of COVID-19 at its facility. *Id.* at 13 (Pet. ¶ 49). By April 24, 2020, 13 residents and 7 staff members had tested positive for the virus. *Id.* (Pet. ¶ 50). Due to the COVID-19 outbreak, Ms. Pirotte was quarantined in her room. *Id.* (Pet. ¶ 51). In May 2020, Ms. Pirotte began exhibiting COVID-19 symptoms. *Id.* (Pet. ¶ 55). She tested positive for COVID-19 on May 15, 2020. *Id.* at 14 (Pet. ¶ 57). On May 19, 2020, Ms. Pirotte died from COVID-19. *Id.* (Pet. ¶ 58).

On April 14, 2021, Mr. Michael Pirotte—the surviving adult son of Rosaire Pirotte— filed a lawsuit in the District Court of Johnson County, Kansas bringing state law claims against defendants. Doc. 1-1 at 2–3 (Pet. ¶ 3). He sued defendants for (1) wrongful death, (2) survival and lost chance of recovery, and (3) negligence. *Id.* at 12–20. He alleges, among other things, that:

- "Brighton Gardens failed to timely intervene to obtain medical attention for Rosaire B. Pirotte." *Id.* at 13 (Pet. ¶ 56).

- "Defendants negligently failed to follow proper infection control protocols and prevent an outbreak of COVID-19." *Id.* at 14 (Pet. ¶ 59).

- "Defendants failed to ensure its workers were not working with symptoms consistent with COVID-19." *Id.* (Pet. ¶ 60).

- "Defendants failed to train, instruct, and/or monitor staff use of proper personal protective equipment to prevent spread of COVID-19." *Id.* (Pet. ¶ 61).

- "Defendants failed to effectively separate those with symptoms of COVID-19 from the remaining population of the facility." *Id.* (Pet. ¶ 62).

- "Defendants failed to adhere to social distancing guidelines put in place in March 2020 to keep its residents safe from being exposed to COVID-19." *Id.* (Pet. ¶ 63).

- "Defendants otherwise failed to sufficiently control or manage the presence of COVID-19 in the facility." *Id.* (Pet. ¶ 64).

- "Defendants failed to timely implement a plan of improvement to address the COVID-19 outbreak at the facility." *Id.* (Pet. ¶ 65).

Plaintiff also alleges that defendants were negligent in:

- "failing to instruct, train, and/or supervise competent staff regarding the care of its residents[.]" *Id.* at 15 (Pet. ¶ 67(a)).

- "failing to follow proper guidelines in place for the prevention of COVID-19 outbreaks in long term care facilities[.]" *Id.* (Pet. ¶ 67(b)).

- "failing to ensure its staff was not allowed to work at Brighton Gardens when they exhibited signs and symptoms consist[ent] with COVID-19[.]" *Id.* (Pet. ¶ 67(c)).

- "failing to instruct, train, and/or supervise staff regarding the appropriate use of personal protective equipment and infection control protocols[.]" *Id.* (Pet. ¶ 67(d)).

- "failing to properly respond to the presence of COVID-19 in the defendant facility to prevent spread[.]" *Id.* (Pet. ¶ 67(e)).

- "failing to timely request additional staff, resources, and other assistance from the public health entities available to respond to COVID-19[.]" *Id.* (Pet. ¶ 67(f)).

- "failing to separate residents with signs and symptoms of COVID-19 from the remaining resident population[.]" *Id.* (Pet. ¶ 67(g)).

- "failing to prevent staff members from coming into contact with both COVID-19 positive and negative residents such that staff members spread the virus from person to person[.]" *Id.* at 15–16 (Pet. ¶ 67(h)).

- "failing to adhere to social distancing guidelines put in place in March 2020 to keep its residents from being exposed to COVID-19[.]" *Id.* at 16 (Pet. ¶ 67(i)).

- "failing to timely, consistently, and properly assess, re-assess and document Rosaire B. Pirotte's physical condition[.]" *Id.* (Pet. ¶ 67(j)).

- "failing to properly supervise and train Defendants' agents and/or servants who were responsible for the care, treatment, and oversight of Rosaire B. Pirotte[.]" *Id.* (Pet. ¶ 67(k)).

- "failing to carry out and follow standing orders, instructions, and protocol regarding the prevention of COVID-19[.]" *Id.* (Pet. ¶ 67(l)).

- "failing to provide adequate training to staff regarding prevention and treatment of infection[.]" *Id.* (Pet. ¶ 67(m)).

- "failing to provide adequate training to staff regarding prevention of COVID-19[.]" *Id.* (Pet. ¶ 67(n)).

- "failing to implement appropriate interventions and thereby allowing Rosaire B. Pirotte to be exposed to COVID-19 in the defendant facility[.]" *Id.* (Pet. ¶ 67(o)).

- "failing to document changes in Rosaire B. Pirotte[]'s condition[.]" *Id.* (Pet. ¶ 67 (p)).

- "failing to adequately, accurately and timely monitor Rosaire B. Pirotte's changes in condition[.]" *Id.* (Pet. ¶ 67(q)).

- "failing to timely respond to Rosaire B. Pirotte's change in condition[.]" *Id.* (Pet. ¶ 67(r)).

- "failing to timely advise Rosaire B. Pirotte's family and doctor of her changes in condition[.]" *Id.* at 17 (Pet. ¶ 67(s)).

- "failing to follow the Defendants' policies and procedures, including but not limited to those policies relating to physician notification, significant changes of condition and medical chart documentation[.]" *Id.* (Pet. ¶ 67(t)).

- "failing to provide adequate training and supervision to staff regarding physician notification, significant changes of condition and medical chart documentation[.]" *Id.* (Pet. ¶ 67(u)).

On August 5, 2021, defendants filed a Notice of Removal (Doc. 1). Defendants also filed a Motion to Dismiss (Doc. 6). Then, on September 2, 2021, plaintiff filed a Motion to Remand

4

(Doc. 22).[1]  With this factual and procedural history in mind, the court now reviews the legal standards governing the Motion to Remand.

## II.      Legal Standard

"'Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute[.]'"  *United States v. James*, 728 F. App'x 818, 822 (10th Cir. 2018) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  Congress has empowered federal courts to hear certain cases removed from state court.  Defendants may remove any state-court civil action to federal court if the federal court has original jurisdiction over at least one of plaintiff's claims.  *See generally* 28 U.S.C. § 1441(a); 28 U.S.C. § 1367.  But, the court must remand the action to state court if the federal court lacks subject matter jurisdiction over it.  28 U.S.C. § 1447(c).  And the "removing party has the burden to demonstrate the appropriateness of removal from state to federal court."  *Baby C v. Price*, 138 F. App'x 81, 83 (10th Cir. 2005) (citation omitted).

## III.     Discussion

In a nutshell, this case requires the court to decide whether plaintiff's claims arise under federal law for purposes of federal question jurisdiction.  This question requires the court, in turn, to consider the doctrine of "complete preemption" and thus determine whether plaintiff's state court allegations fall within the scope of a federal remedial right.

In this case, the relevant remedial right comes from the PREP Act, 42 U.S.C. §§ 247d—d-10.  And the scope of that remedial right depends on a few words in the statute, *i.e.*,:  "injuries directly caused by the administration or use of a covered countermeasure[.]"  42 U.S.C. § 247d-

---

[1]      Defendants' Memorandum requests a "jurisdictional hearing."  Doc. 28 at 34.  They offer to present "jurisdictional evidence" if desired by the court.  The court respectfully declines this offer because the parties' papers convey the parties' arguments so effectively.

6e(a).  Plaintiff's Motion to Remand thus turns on the question whether this federal remedy envelops plaintiff's removed state law claims.  But before diving into that deep well of arguments, the court reviews several general rules governing removal of state law claims to federal court.

### A.    Removal of Federal Question Cases to Federal Court

Congress has granted federal district courts authority to hear certain civil actions brought originally in state court.  *See* 28 U.S.C. § 1441.  "Under the removal statute, 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant' to federal court."  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (quoting 28 U.S.C. § 1441(a)).

"One category of cases of which district courts have original jurisdiction is '[f]ederal question' cases:  cases 'arising under the Constitution, laws, or treaties of the United States.'"  *Id.* (quoting 28 U.S.C. § 1331).  "Ordinarily, determining whether a particular case arises under federal law turns on the 'well-pleaded complaint' rule."  *Id.* (citation and internal quotation marks omitted).  Under this rule, "a suit arises under federal law only when the plaintiff's statement of his own cause of action shows that it is based on federal law."  *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1202 (10th Cir. 2012) (citations and internal quotation marks omitted).

A federal defense typically cannot supply the federal question required by the well-pleaded complaint rule, and thus cannot create statutory federal question jurisdiction.  *Id.*; *see also Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908).  So as "a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim."  *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).

"There is an exception, however, to the well-pleaded complaint rule.  '[W]hen a federal statute wholly displaces the state-law cause of action through complete pre-emption,' the state claim can be removed."  *Davila*, 542 U.S. at 207 (quoting *Anderson*, 539 U.S. at 8); *see also Christensen v. BNSF Ry. Co.*, 242 F. Supp. 3d 1186, 1190 (D. Kan. 2017).

The court now explores the "complete preemption" doctrine and considers whether this exception to the well-pleaded complaint rule applies here.

**B.     The Doctrine of "Complete Preemption"**

"In *Anderson*, the Supreme Court held that a state claim may be removed to federal court in only two circumstances:  (1) 'when Congress expressly so provides'; or (2) 'when a federal statute wholly displaces the state-law cause of action through complete pre-emption.'"  *Devon Energy*, 693 F.3d at 1205 n.7 (quoting *Anderson*, 539 U.S. at 8).

Federal courts frequently explain that the preemption required to invoke the "complete preemption" doctrine is not the "ordinary preemption" that defendants usually rely on as a defense.  *See Devon Energy*, 693 F.3d at 1203 n.4 (citations omitted); *see also Christensen*, 242 F. Supp. 3d at 1190.  Instead, "'complete preemption' refers to the replacement of a state cause of action with a federal one."  *Schmeling v. NORDAM*, 97 F.3d 1336, 1342 (10th Cir. 1996).  It is "quite rare."  *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013) (citation and internal quotation marks omitted); *see also Devon Energy*, 693 F.3d at 1204–05 (noting that "the Supreme Court has warned that complete preemption should not be lightly implied" (citation and internal quotation marks omitted)).

"'When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.'"  *Dutcher*, 733 F.3d at 985 (quoting *Anderson*, 539 U.S. at 8); *see*

*also Davila*, 542 U.S. at 207–08.  Similarly, "if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 23–24 (1983).

To determine whether a federal act completely preempts plaintiff's claims, the court must answer two questions affirmatively:  (1) does "the federal regulation at issue preempt[ ] the state law relied on by the plaintiff"; and (2) did Congress intend to allow removal in this case.  *Devon Energy*, 693 F.3d at 1205–06 (citing *Schmeling*, 97 F.3d at 1342).  Our Circuit has instructed district courts to start with the second question—congressional intent to allow removal.  *Id.* at 1206.  And in "providing further guidance concerning the requirements for complete preemption, the [Supreme] Court observed that 'the proper inquiry focuses on whether Congress intended the federal cause of action *to be exclusive* rather than on whether Congress intended that the cause of action be removable.'"  *Id.* at 1206 n.7 (quoting *Anderson*, 539 U.S. at 9 n.5 (emphasis added)) (noting that *Anderson*'s "formulation of the complete-preemption test ultimately may require [the Tenth Circuit] to reformulate the test [it] set out in *Schmeling*" but declining to do so in *Devon Energy* (citations omitted)).

Under either formulation of the complete preemption analysis, "the claims at issue must fall within the scope of the relevant federal statute for complete preemption to apply." *Eaton v. Big Blue Healthcare, Inc.*, 480 F. Supp. 3d 1184, 1190 (D. Kan. 2020) (citation omitted); *see also Anderson*, 539 U.S. at 7; *Franchise Tax Bd.*, 463 U.S. at 23–25.  Here, defendants assert that federal question jurisdiction exists via the complete preemption doctrine, so "it is their burden to show," first, that the PREP Act applies to plaintiff's claims.  *Eaton*, 480 F. Supp. 3d at 1192.

In the next section, the court summarizes the PREP Act. It then turns to the preliminary question whether plaintiff's claims fall within the scope of the PREP Act.

### C.      Whether Plaintiff's Claims Fall Within a PREP Act Remedy

#### 1.      The PREP Act

"In a nutshell, the PREP Act empowers the Secretary of the Department of Health and Human Services to deem an event a 'public health emergency' and then take action to utilize funds established by the Treasury to manage the emergency." *Sherod v. Comprehensive Healthcare Mgmt. Servs., LLC*, No. 20CV1198, 2020 WL 6140474, at *6 (W.D. Pa. Oct. 16, 2020) (quoting 42 U.S.C. § 247d(a)). Once the Secretary has issued such a declaration, the statute "provides sweeping immunity for certain claims against certain covered individuals[.]" *Eaton*, 480 F. Supp. 3d at 1190. The PREP Act's immunity provision establishes that "a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure . . . ." 42 U.S.C. § 247d-6d(a)(1).

In March 2020, HHS Secretary Alex Azar issued a PREP Act declaration for COVID-19.[2] On December 3, 2020, he issued the Fourth Amendment to the Declaration. 85 Fed. Reg. at 79,190. And, on January 8, 2021, Health and Human Services General Counsel published Advisory Opinion 21-01 ("HHS Advisory Opinion 21-01") about the PREP Act. *See* Dep't Health & Human Servs., Advisory Opinion 21-01 on the Public Readiness and Emergency Preparedness Act Scope of Preemption Provision (Jan. 8, 2021),

---

[2]      *See* Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198 (Mar. 10, 2020) ("Declaration").

https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/2101081078-jo-advisory-opinion-prep-act-complete-preemption-01-08-2021-final-hhs-web.pdf.

### 2.     The PREP Act Creates Federal Remedial Rights

"In order to determine whether complete preemption is applicable here, [the court] must first address whether federal law provides a private right of action to sue for violations . . . ." *Dutcher*, 733 F.3d at 986.  The PREP Act creates two federal remedies.

*First*, the "PREP Act permits 'an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct . . . .'" *Eaton*, 480 F. Supp. 3d at 1191 (quoting 42 U.S.C. § 247d-6d(d)(1)).  The PREP Act defines "willful misconduct" as "an act or omission that is taken—(i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; and (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit."  42 U.S.C. § 247d-6d(c)(1)(A).  And the PREP Act provides that courts must construe willful misconduct "as establishing a standard for liability that is more stringent than a standard of negligence in any form or recklessness."  *Id.* at § 247d-6d(c)(1)(B).

*Second*, for "injuries not involving willful misconduct, the PREP Act establishes a 'Covered Countermeasure Process Fund,' which provides 'compensation to eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure pursuant to such declaration.'"  *Eaton*, 480 F. Supp. 3d at 1191 (quoting 42 U.S.C. § 247d-6e(a)).[3]

---

[3]     The statute's use of "proximately caused" for one remedy and "directly caused" for another is notable.  *See* Antonin Scalia & Bryan A. Garner, Reading Law:  The Interpretation of Legal Texts, § 25 (2012) ("[W]here the document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea."); *see also* Caleb Nelson, *Statutory Interpretation*, 88 (2014).  But to resolve the current motion, the court need not determine whether the statutory text uses the terms "directly caused" and "proximately caused" synonymously.

Next, the court considers the scope of these federal remedial rights.

### 3.    The Scope of the PREP Act's Remedial Rights

#### a.  Generally

Our court has examined the PREP Act and the scope of its causes of action.  *See, e.g.*,

*Eaton*, 480 F. Supp. 3d at 1192.  *Eaton* explained:

> In sum, the PREP Act creates immunity for all claims of loss causally connected to
> the administration or use of covered countermeasures, which are certain drugs,
> biological products, or devices.  Exceptions to immunity exist for claims of willful
> misconduct but suit must be brought in the United States District Court for the
> District of Columbia.  All other claims for injuries "directly caused by the
> administration or use of a covered countermeasure" must be pursued through the
> Covered Countermeasure Process Fund.  State laws that differ or conflict regarding
> the administration or use of covered countermeasures are preempted.

*Id.*; *see also Sherod*, 2020 WL 6140474, at *6 ("adopt[ing] the succinct summary of the PREP

Act as set forth by the United States District Court for the District of Kansas").  Here, the

Petition alleges nothing about willful misconduct, so plaintiff's claims cannot fall within the

scope of the act's first remedy.  The court thus focuses on the second federal remedy—claims

under the Covered Countermeasure Process Fund.

#### b.  Covered Countermeasure Process Fund Claims under § 247d-6e(a)

When the Secretary of Health and Human Services issues a declaration under 42 U.S.C. §

247d-6d(b), the PREP Act provides that "there is hereby established in the Treasury an

emergency fund . . . for purposes of providing timely, uniform, and adequate compensation to

eligible individuals for covered injuries directly caused by the administration or use of a covered

countermeasure pursuant to such declaration[.]"  42 U.S.C. § 247d-6e(a).  If plaintiff's

allegations do not assert "injuries directly caused by the administration or use of a covered

countermeasure[,]" then the claim falls outside the scope of the federal remedy.  *Id.*  And if the

claim falls beyond the scope of the federal remedy, that federal cause of action cannot serve as

the basis for complete preemption of plaintiff's state law claim.  *See Franchise Tax Bd.*, 463 U.S. at 23–25.

"A 'covered countermeasure' under the PREP Act is, simplified, a drug, biological product, or device that is a 'qualified pandemic or epidemic product' or a 'security countermeasure,' or is authorized for emergency use under the Federal Food, Drug, and Cosmetic Act." *Eaton*, 480 F. Supp. 3d at 1191 (citing 42 U.S.C. § 247d-6d(i)(1)).  "It also includes a 'respiratory protective device that is approved by the National Institute for Occupational Safety and Health.'" *Id.* (quoting 42 U.S.C. § 247d-6d(i)(1)).  Secretary Azar's Declaration under the PREP Act further defines "covered countermeasures" as:

> (a) Any antiviral, any drug, any biologic, any diagnostic, any other device, any respiratory protective device, or any vaccine manufactured, used, designed, developed, modified, licensed, or procured:
>
>> i. To diagnose, mitigate, prevent, treat, or cure COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom; or
>>
>> ii. to limit the harm that COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom, might otherwise cause;
>
> (b) a product manufactured, used, designed, developed, modified, licensed, or procured to diagnose, mitigate, prevent, treat, or cure a serious or life-threatening disease or condition caused by a product described in paragraph (a) above;
>
> (c) a product or technology intended to enhance the use or effect of a product described in paragraph (a) or (b) above; or
>
> (d) any device used in the administration of any such product, and all components and constituent materials of any such product.

85 Fed. Reg. at 79,196–97.

The PREP Act does not define "administration or use."  But the Declaration explains that

Administration of the Covered Countermeasure means [1] physical provision of the countermeasures to recipients, or [2] activities and decisions directly relating to public and private delivery, distribution and dispensing of the countermeasures to recipients, management and operation of countermeasure programs, or

management and operation of locations for the purpose of distributing and dispensing countermeasures.

85 Fed. Reg. at 79,197.

To determine the scope of the statute's compensation fund remedy, the court now considers whether "inaction claims"—like ones plaintiff asserts here—fall within the scope of the PREP Act.

### 4.    Whether "Inaction Claims" Can Fall Within the PREP Act's Scope

On December 3, 2020, then HHS Secretary Azar amended, among other provisions, Section IX of the Declaration to note, "[w]here there are limited Covered Countermeasures, *not* administering a Covered Countermeasure to one individual in order to administer it to another individual can constitute 'relating to . . . the administration to . . . an individual' under 42 U.S.C. 247d–6d." 85 Fed. Reg. at 79,197.  The Fourth Amendment to Declaration explains that "[p]rioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declaration's liability protections." *Id.*  The Fourth Amendment to the Declaration illustrates that, in certain circumstances, "the failure to administer" the Covered Countermeasure to one person "'relat[es] to . . . the administration to'" another.  *Id.* (quoting 42 U.S.C. § 247d-6d).

So, based on this amendment to Section IX, an "inaction claim" isn't necessarily beyond the scope of the PREP Act.  The statute's immunity provision could cover some forms of an inaction claim.  It could also apply to a claim alleging a failure to administer countermeasures. Before this amendment, several courts, including our own, "reasoned that 'the PREP Act addresses the administration or use of covered countermeasures and there is simply no room to read it as equally applicable to the non-administration or non-use of covered countermeasures.'" *Maltbia v. Big Blue Healthcare, Inc.*, No. 20-2607-DDC-KGG, 2021 WL 1196445, at *6 (D.

13

Kan. Mar. 30, 2021) (quotation cleaned up) (quoting *Eaton*, 480 F. Supp. 3d at 1186, n.1, 1194); *see also id.* at *6–7 (collecting cases). The possibility that an inaction claim could fall within the PREP Act's scope does not upend the distinction between action and inaction that our court, among others, has drawn. The Fourth Amended Declaration suggests that alleged inaction or failure to administer countermeasures falls within the federal grant of immunity when paired closely with an act administering a countermeasure to someone else.

The former Secretary also noted that "*not* administering a Covered Countermeasure" can constitute "'relating to . . . the administration to . . . an individual'" under 42 U.S.C. § 247d-6d where (1) "there are limited Covered Countermeasures," and (2) the alleged failure to administer a countermeasure to one individual is "in order to administer it to another individual[.]" 85 Fed. Reg. at 79,197 (quoting 42 U.S.C. § 247d-6d (emphasis added)). The former Secretary's illustration reinforces the requirement that these two conditions exist for "inaction claims" to fall within the statute's reach. *See* 85 Fed. Reg. at 79,197. For example, an inaction claim resulting from *not* administering a covered countermeasure may occur where person-A "was able to receive the [single covered countermeasure] *only because* it was not administered to" person-B. *Id.* (emphasis added).

The Fourth Amendment to the Declaration also provides that the Declaration "must be construed in accordance with the Department of Health and Human Services (HHS) Office of the General Counsel (OGC) Advisory Opinions on the [PREP] Act[.]" *Id.* at 79,191. After the Fourth Amendment to the Declaration, the Department of Health and Human Services issued HHS Advisory Opinion 21-01. HHS Advisory Opinion 21-01, on which defendants rely heavily, opines that the PREP Act is a "complete preemption statute" because "it establishes . . . a federal cause of action, administrative or judicial, as the only viable claim" and because it "vests

exclusive jurisdiction in a federal court." Dep't Health & Human Servs., Advisory Opinion 21-01 on the Public Readiness and Emergency Preparedness Act Scope of Preemption Provision (Jan. 8, 2021), at 2, https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/2101081078-jo-advisory-opinion-prep-act-complete-preemption-01-08-2021-final-hhs-web.pdf. But HHS Advisory Opinion 21-01 also discusses when a case triggers the PREP Act.

HHS Advisory Opinion 21-01 asserts that inaction can trigger PREP Act immunity if the inaction is linked closely to action. *Id.* at 3. This Opinion returns to the example of a healthcare professional administering the only available dose of vaccine to a more vulnerable person instead of a less vulnerable person. *Id.* In this example, the more vulnerable person "was able to receive the vaccine *only because* it was not administered to the person in the less-vulnerable population." *Id.* (emphasis added). And, the Opinion illustrates, for example, that "the failure to purchase any [personal protective equipment], if not the outcome of some form of decision-making process[,] may not be sufficient to trigger the PREP Act." *Id.*

As the court has noted before, the Advisory Opinion's example reflects the difference between (1) robbing Peter *and* paying Paul, versus (2) robbing Peter *to pay* Paul—or more precisely: not paying Peter in order to pay Paul. HHS Advisory Opinion 21-01 also emphasizes this distinction: "The language of the PREP Act itself supports a distinction between allocation which results in non-use by some individuals, on the one hand, and nonfeasance, on the other hand, that also results in non-use." *Id.* at 4. Other courts interpreting the Fourth Amended Declaration and HHS Advisory Opinion 21-01 have reached a similar conclusion. *See Lollie v. Colonnades Health Care Ctr. Ltd. Co.*, No. H-21-1812, 2021 WL 4155805, at *4 (S.D. Tex. Sept. 13, 2021) ("'[T]here is only immunity for inaction claims when the failure to administer a

covered countermeasure to one individual has a close causal relationship to the administration of that covered countermeasure to another individual.'" (quoting *Lyons v. Cucumber Holdings, LLC*, 520 F. Supp. 3d 1277, 1285–86 (C.D. Cal. 2021) (internal quotation marks omitted))

So, the court is fully mindful of former Secretary Azar's understanding that PREP Act immunity can cover certain inaction claims. But this case's motion requires the court to determine the scope of PREP Act's remedy—not its grant of immunity.

The court concludes that the Declaration's emphasis on causation in the context of non-administration claims reinforces our court's causation analysis in earlier PREP Act cases. Specifically, our court has rejected the notion "that a facility using covered countermeasures <u>somewhere</u> in the facility is sufficient to invoke the PREP Act as [it applies] to all claims that arise in that facility" because the Act "still requires a *causal connection* between the injury and the use or administration of covered countermeasures[.]" *See Eaton*, 480 F. Supp. 3d at 1194 (second emphasis added). Consistent with *Eaton* and its sibling cases, the Declaration's two conditions for PREP Act immunity in "inaction claims," *i.e.*, claims alleging liability for *not* administering a covered countermeasure, require a close causal relationship between the injurious inaction and the corresponding administration that caused it.

This court has faced several similar cases, *i.e.*, ones where plaintiff sued nursing homes claiming that: (a) they failed to act in many different ways to prevent spread of COVID-19; and (b) those alleged failures to act directly and proximately caused alleged harms. *See Anson v. HCP Prairie Vill. KS OPCO LLC*, 523 F. Supp. 3d 1288, 1300–02 (D. Kan. 2021); *see also Goldblatt v. HCP Prairie Vill. KS OPCO LLC*, 516 F. Supp. 3d 1251, 1262–64 (D. Kan. 2021); *Grohmann v. HCP Prairie Vill. KS OPCO LLC*, 516 F. Supp. 3d 1267, 1278–81 (D. Kan. 2021); *Maltbia v. Big Blue Healthcare, Inc.*, No. 20-2670-DDC-KGG, 2021 WL 1196445, at *8–10 (D.

Kan. Mar. 30, 2021).  In these cases, the court "reasoned that the Declaration's two conditions for PREP Act immunity in inaction claims for *not* administering a covered countermeasure require a close causal relationship between the injurious inaction and the corresponding administration or use that caused it."  *Maltbia*, 2021 WL 1196445, at *8 (internal quotation marks omitted) (citing *Anson*, 523 F. Supp. 3d at 1300; *Goldblatt*, 516 F. Supp. 3d at 1263–64; *Grohmann*, 516 F. Supp. 3d at 1281).  In all four cases, the court concluded that plaintiff's allegations did not trigger the PREP Act because plaintiff's claims were missing the required causation.  That is, "plaintiffs hadn't alleged that their injuries were caused by inaction—non-administration or non-use—*caused by* or *in order to* administer covered countermeasures elsewhere."  *Id.* (internal quotation marks omitted) (citing *Anson*, 523 F. Supp. 3d, at 1301; *Goldblatt*, 516 F. Supp. 3d at 1264, at *10; *Grohmann*, 516 F. Supp. 3d at 1281).

Several other courts have addressed this same issue and they likewise concluded that general negligence claims fall outside the PREP Act.  *See Lollie*, 2021 WL 4155805, at *3 (collecting cases); *see also Khalek v. S. Denver Rehab., LLC*, ___ F. Supp. 3d ___, No. 20-cv-2240-RBJ, 2021 WL 2433963, at *6 (D. Colo. June 11, 2021) (finding that the PREP Act did not completely pre-empt plaintiff's negligence claims); *Gwilt v. Harvard Square Retirement & Assisted Living*, 537 F. Supp. 3d 1231, 1241 (D. Colo. 2021) ("[T]he Fourth Amendment [to the Declaration] does not alter the Court's conclusion that the PREP Act does not apply to plaintiff's [negligence] claims."); *Est. of McCalebb v. AG Lynwood, LLC*, No. 2:20-CV-09746-SB-PVC, 2021 WL 911951, at *5 (C.D. Cal. Mar. 1, 2021) ("[C]ases of general neglect fall outside the protection of the PREP Act."); *Lyons v. Cucumber Holdings, LLC*, 520 F. Supp. 3d 1277, 1286 (C.D. Cal. 2021) ("Plaintiff does not allege that Decedent's death was 'causally connected' to the administration or use of any covered countermeasure.  Instead, Plaintiff alleges 'precisely the

opposite'—that it was inaction, rather than action, by Defendants that caused Decedent's death."); *Dupervil v. All. Health Operations, LCC*, 516 F. Supp. 3d 238, 255 (E.D.N.Y. Feb. 2, 2021) (on appeal) (holding PREP Act did not completely preempt state law claims when "crux of Plaintiff's claims is that his father died because Defendants failed to take certain steps such as separating residents, enforcing social distancing among residents and staff, timely restricting visitors, cancelling group and communal activities, ensuring adequate staffing levels, enforcing mask-wearing, and screening people entering the facility for symptoms of COVID-19").  Also, the Third Circuit—the only Circuit court to consider this issue so far—noted that not "all state-law causes of action are invulnerable to complete preemption under the PREP Act[,]" but concluded that plaintiffs' state-law negligence and wrongful death lawsuits belonged in state court.  *Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 412–13 (3d Cir. 2021).  The court finds this authority persuasive and predicts our Circuit would adopt a similar view.

In sum, the court finds that some inaction claims can fall within the scope of the PREP Act's remedial scheme, but only if the inaction claim has a "*causal connection* between the injury and the use or administration of covered countermeasures[.]"  *Eaton*, 480 F. Supp. 3d at 1194.

### 5.    Whether Plaintiff's Claims Here Fall Within the PREP Act's Cause of Action

Plaintiff's Petition here alleges that defendants failed to act in many different ways, s*ee* Doc. 1-1 at 14–17 (Pet.), and alleges that those failures to act caused the harms at issue, *see id.* at 18 (Pet. ¶¶ 72, 73).  As in *Anson*, plaintiff here alleges that defendants failed to take various preventive measures to stop entry, spread, and consequences of COVID-19 within the facility where decedent lived and that defendants' failure to take those precautions led decedent to

contract, develop, and die of COVID-19.  *See id.* at 14–17 (Pet.); *see also Anson*, 2021 WL 308156, at *1–2.

Defendants do their best to contort plaintiff's allegations of inaction into action, arguing that plaintiff's "allegations place into issue the manner in which covered countermeasures were used or administered in the facility, and bring the claim under the PREP Act."  Doc. 28 at 23.  But plaintiff is the master of his Complaint (here, a Petition) and reshaping his allegations so they suit defendants' arguments ignores that governing principle.  *See Eaton*, 480 F. Supp. 3d at 1193 n.12 (emphasizing that "the complaint is what governs at this stage").  A removing defendant thus holds no license to rewrite plaintiff's state-court claims and "justify removal on the basis of facts not alleged in the complaint."  *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 396–97 (1987); *see also Eaton*, 480 F. Supp. 3d at 1193–94.

Defendants frame plaintiff's allegations as ones critiquing Brighton Gardens's implementation of covered countermeasures.  *See* Doc. 28 at 22–23.[4]  Defendants pull apart plaintiff's Petition to create action claims, ignoring the context of plaintiff's allegations.  *See id.* For example, defendants assert plaintiff's allegations invoke the use of "covered countermeasures" such as "personal protective equipment" (PPE), tests, pulse oximeters and thermometers, and medications.  Doc. 28 at 23.  But these contortions stretch the allegations well beyond all measure of reasonable flexibility.  To be certain, the Petition refers to PPE, *see* Doc. 1-1 at 14 (Pet. ¶ 61), and COVID-19 screening, *see id.* at 14 (Pet. ¶ 62).  But one begins to hear their ligaments pop when defendants assert that plaintiff's "allegations place into issue the

---

[4]     For example, defendants claim that plaintiff relies on defendants' "alleged 'assess[ments]' and 'document[ation] of Ms. Pirotte's physical condition[.]'"  Doc. 28 at 10 (citing Pet. ¶¶ 67(p), 67(q)).  But plaintiff's negligence claims rely on defendants' alleged *failure* "to document changes in" Ms. Pirotte's condition and defendants' alleged *failure* "to timely, consistently, and properly assess" Ms. Pirotte.  Doc. 1-1 at 16 (Pet. ¶¶ 67(j), 67(p)).

manner in which covered countermeasures were used or administered in the facility[.]"  Doc. 28 at 23.  Essentially, defendants argue that if defendants used *any* countermeasures inside the facility then the PREP Act applies because plaintiff asserts claims about defendants' infection control program failures, which fall within the definitions of "recommended activities" and "administration."  *See* Doc. 28 at 25.  So, defendants argue, even where plaintiff alleges inaction claims, plaintiff *really* is asserting action claims covered by the PREP Act.  Our court squarely has refused to read similar allegations in this fashion.  Instead, it has concluded that inaction claims require "a causal connection between the injury and the use or administration of covered countermeasures[.]"  *See Robertson v. Big Blue Healthcare, Inc.*, 523 F. Supp. 3d 1271, 1285 (D. Kan. 2021); *see also Jackson v. Big Blue Healthcare, Inc.*, No. 2:20-cv-2259-HLT-JPO, 2020 WL 4815099, at *7 (D. Kan. Aug. 19, 2020) (rejecting argument "that a facility using covered countermeasures <u>somewhere</u> in the facility is sufficient to invoke the PREP Act as to all claims that arise in that facility").

In other places, defendants simply revise the Petition's allegations hoping to confect the elements of a PREP Act claim.  *See* Doc. 28 at 27 ("[T]he Petition does *not* allege total inaction on behalf of Defendants nor does it allege that Defendants failed to use or administer any countermeasure within the facility.  Rather, all of the operative allegations of negligence are modified by some qualifier (e.g., 'properly,' 'timely,' 'adequately').").[5]  Defendants argue that plaintiff's allegations "simply challenge[ ] the *manner* in which PPE was used in the facility, or that the 'decisions or activities' or 'management and operation' of the facility for the purposes of

---

[5]  The court isn't persuaded by defendants' argument about adverbs.  "Total inaction"—apparently different than inaction—or failure to use countermeasures, isn't an element of a negligence claim.  Breach of duty, however, is.  *Manley v. Hallbauer*, 423 P.3d 480, 483 (Kan. 2018).  Plaintiff alleges defendants breached their duty to Ms. Pirotte by, for example, "failing to provide adequate training" and "failing to timely respond to [Ms.] Pirotte's change in condition[.]"  Doc. 1-1 at 16 (Pet. ¶¶ 67(m), 67(r)).  These "qualifiers" don't transform the claim from a negligence claim to a PREP Act claim.

infection control were improper[.]" Doc. 28 at 27. But this approach to the task doesn't employ the right method for determining whether a case belongs in federal court. *See Eaton*, 480 F. Supp. 3d at 1193–94 ("To the extent Defendants want to argue that the PREP Act applies, they must do so based on the complaint as it is—not as Defendants would prefer it to be."); *see also Caterpillar*, 482 U.S. at 396–97 (explaining that a defendant can't ignore the complaint's allegations and argue "that there are different facts [plaintiff] might have alleged that would have constituted a federal claim" so defendant can "justify removal on the basis of facts not alleged in the complaint").

But even if the Petition had alleged conduct that qualifies as "administration or use of a covered countermeasure" within the meaning of the PREP Act—and it doesn't—the statute "still requires" allegations about a "causal connection between the injury and the use or administration of covered countermeasures[.]" *See Eaton*, 480 F. Supp. 3d at 1194 & n.13. Nothing in the Petition "suggest[s] that the decedent's death was *causally connected* to the administration or use of any drug, biological product, or device (i.e. a covered countermeasure[ ])." *Id.* at 1192 (emphasis added). As in *Eaton*, the claims here are "precisely the opposite: [they allege] that inaction rather than action caused the death." *Id.*; *see also Sherod*, 2020 WL 6140474, at *7 (holding that plaintiff's "allegations do not fall within the purview of the PREP Act" where plaintiff's "negligence, misrepresentation, wrongful death and survivor claims are not causally connected to [the facility's] <u>use</u> of covered countermeasures" because plaintiff "alleges that [the facility's] *failure to utilize* countermeasures caused the death of the decedent" (second emphasis added)).

As already explained, certain inaction claims—in theory—could trigger the PREP Act. But here, plaintiff alleges neither (1) limited covered countermeasures nor (2) a failure to

administer those countermeasures to decedent "in order to administer [them] to another" individual. 85 Fed. Reg. at 79,197. And while defendants characterize these allegations in such terms,[6] it's the actual allegations in the Petition that control the preemption analysis. *See Caterpillar*, 482 U.S. at 396–97 (holding defendant cannot "create the prerequisites to removal by ignoring the set of facts . . . presented by" the complaint or by "arguing that there are different facts [plaintiffs] might have alleged that would have constituted a federal claim"). And the Petition alleges nothing about "[p]rioritization or purposeful allocation of a Covered Countermeasure[.]" 85 Fed. Reg. at 79,197. Even if one construes one of plaintiff's allegations to allege administration of a covered countermeasure, plaintiff never alleges a direct, causal connection between (1) decedent's injuries and (2) defendants' decisions to administer to *another person* the covered countermeasures that defendants claim the Petition refers to—such as PPE, thermometers, and diagnostic test kits. Doc. 28 at 28. This omission places the state law claims here outside the scope of the PREP Act's remedial right. *See Saunders v. Big Blue Healthcare, Inc.*, 522 F. Supp. 3d 946, 962 (D. Kan. 2021) (analyzing similar allegations and concluding that state law claims did not fall within the scope of the PREP Act because plaintiff does not allege "the loss was caused by the non-use or non-administration of covered countermeasures <u>linked</u> to the use or administration of that countermeasure to another person instead"); *Robertson*, 523 F. Supp. 3d at 1284 (same).

In sum, plaintiff's allegations assert none of the qualifying inactions described by the PREP Act Declaration. *See* 85 Fed. Reg. at 79,197. Plaintiff does not allege inaction—non-administration or non-use—*caused by* or *in order to* administer covered countermeasures

---

[6] *See, e.g.*, Doc. 28 at 28 ("The claims in the Petition . . . necessarily relate to *how* and *when* Defendants allocated, implemented, used, distributed, and administered available countermeasures within the facility[.]").

elsewhere.  So, while former Secretary Azar read the PREP Act's immunity to cover a species of "inaction" claims, that species doesn't inhabit this case's Petition.

Thus, the complete preemption exception to the "well-pleaded complaint" rule does not apply here, so the court cannot conclude that plaintiff brings a "civil action[ ] arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Thus, § 1331 cannot provide a statutory basis for the court to exercise "original jurisdiction" over the action and removal under 28 U.S.C. § 1441(a) was improper.

### 6.  Defendant's Other Arguments Do Not Demonstrate Preemption

Defendants make several other complete preemption arguments.  The court finds them unpersuasive for reasons explained below.

*First*, defendants argue that the structure of the PREP Act evinces Congress's intent to preempt plaintiff's state law claims completely.  Doc. 28 at 14–16.  The PREP Act is a broad immunity statute.  But it nonetheless provides a remedy.  If a plaintiff is injured by use or administration of a covered countermeasure by a covered person, then that covered person is immune.  In that situation, the plaintiff can recover from the emergency fund.  The PREP Act's only exception to this broad grant of immunity is for willful misconduct; the PREP Act creates an exclusive federal remedy for claims of willful misconduct.  42 U.S.C. § 247d-6d(d)(1).  Defendants argue that this structure—a compensatory fund and an exclusive federal cause of action—"offers a remedy for *all* individuals[.]"  Doc. 28 at 15.  So, defendants argue, the structure of the PREP Act shows "'an intent to displace state-law remedies entirely.'"  *Id.* at 16 (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)).

Even if plaintiff's claims arise from the use or administration of countermeasures and fall within the PREP Act—they do not—this argument still fails.  Defendants cite, briefly and

without explanation, *Anderson*, 539 U.S. 1.  But *Anderson* only addresses the National Bank

Act's exclusive cause of action.  *See generally Anderson*, 539 U.S. 1.  The PREP Act's exclusive

cause of action (for willful misconduct) isn't at issue here.  And the PREP Act and National

Bank Act are different in several important ways.  *See Maglioli v. All. HC Holdings LLC*, 16

F.4th 393, 409–10 (3d Cir. 2021) (explaining that the National Bank Act unambiguously created

a cause of action but did not make that cause of action exclusive, unlike the PREP Act, which

"unambiguously creates an *exclusive* federal cause of action" for willful misconduct).  So,

*Anderson* doesn't provide any support for defendants' contention.

Defendants also rely on the "similar statutory scheme and framework" of the Air

Transportation Safety and System Stability Act (ATSSSA).  The Second Circuit concluded that

the ATSSSA established a federal compensation fund and a federal cause of action and it held

that the ATSSSA was a complete preemption statute.  So, defendants reason, the court likewise

should hold the PREP Act is a complete preemption statute because it also involves a federal

compensation fund and a federal cause of action.  Doc. 28 at 16.  But defendants' analogy is

strained.  The federal cause of action in the ATSSSA is far broader than the PREP Act's cause of

action.  The ATSSSA "creates a general remedy for damages" but the "PREP Act, in contrast,

enumerates the elements of a specific cause of action for willful misconduct."  *Maglioli*, 16 F.4th

at 412.  *Compare* ATSSSA, Pub L. No. 107-42, § 408(b)(1), 115 Stat. 240–41 (2001) ("There

shall exist a Federal cause of action for damages arising out of the hijacking and subsequent

crashes . . . on September 11, 2001. . . . [T]his cause of action shall be the exclusive remedy for

damages arising out of the hijacking and subsequent crashes[.]") *with* 42 U.S.C. § 247d-6d(d)(1)

("[T]he sole exception to the immunity from suit and liability of covered persons . . . shall be for

an exclusive Federal cause of action . . . for . . . willful misconduct[.]").  Nor does the PREP

Act's compensation fund itself provide evidence of complete preemption.  Neither "the Supreme Court nor any circuit court has extended complete preemption to a statute because it created a compensation fund."  *Maglioli*, 16 F.4th at 412.

*Second*, defendants direct the court to *Garcia v. Welltower OpCo Group LLC*, 522 F. Supp. 3d 734 (C.D. Cal. 2021).  Doc. 28 at 30–31.  There, the court declined to remand state law claims.  *Robertson v. Big Blue Healthcare*, 523 F. Supp. 3d 1271, 1285 (D. Kan. 2021); *Lollie*, 2021 WL 4155805, at *5 n.3.  *Garcia* viewed the PREP Act as a complete preemption statute, concluded that the PREP Act preempted plaintiff's state law claims for elder abuse and neglect, wrongful death, and intentional infliction of emotional distress, and denied plaintiff's motion to remand.  522 F. Supp. 3d at 740–45.  Relying on HHS Advisory Opinion 21-01, *Garcia* held, "when a party attempts to comply with federal guidelines—in this case, concerning the COVID-19 pandemic—the PREP Act would provide complete preemption."  *Id.* at 742.  And, *Garcia* found plaintiff's complaint in that case disclosed "possible unsuccessful attempts at compliance with federal or state guidelines[.]"  *Id.* at 745.  *Garcia* also ruled that plaintiff did not allege "instances of nonfeasance . . . but rather instances where [defendants] acted in ways to 'limit the harm such a pandemic or epidemic might otherwise cause.'"  *Id.* (quoting 85 Fed. Reg. at 35,101).  *Garcia* "found that the plaintiff's allegations include the 'use and misuse of [personal protective equipment]' and detailed 'infection control measures and procedures including symptom checking, staff monitoring and screening, and limiting visitation.'"  *Robertson*, 523 F. Supp. 3d at 1285 (quoting *Garcia*, 522 F. Supp. 3d at 744).

The court isn't persuaded by *Garcia* and its conclusion represents a decidedly minority view.  Only one court has followed *Garcia*'s lead, *Rachal v. Natchitoches Nursing & Rehab. Ctr. LLC*, No. 21-cv-00334, 2021 WL 5449053, at *2 n.3 (W.D. La. Apr. 30, 2021).  In contrast, the

"widespread response to *Garcia*'s reasoning has been negative[,]"  *Mackey v. Tower Hill Rehab.,*

*LLC*, No. 21 C 2608, 2021 WL 5050292, at *4 (N.D. Ill. Nov. 1, 2021).  The *Garcia* court relied

heavily on HHS Advisory Opinion 21-01 and deferred[7] to its conclusion that the PREP Act is a

complete preemption statute.  But this court "joins the other district courts that have unanimously

concluded that the HHS's Advisory Opinion should not receive unfettered deference."  *Martin v.*

*Petersen Health Operations, LLC*, 2021 WL 4313604, at *10 (C.D. Ill. Sept. 22, 2021)

(collecting cases); *see also Maglioli*, 16 F.4th at 403–04 ("Deference is not owed to these

interpretations for the simple reason that HHS is not delegated authority under the PREP Act to

interpret the scope of federal courts' jurisdiction.").  So, the court declines to follow *Garcia*'s

lead.

   *Third,* defendants attempt to establish complete preemption by directing the court to two

more supplemental "federal authorities"—a Department of Justice Statement of Interest and the

Fifth Amendment to the PREP Act's Declaration.  Doc. 28 at 16–18.  Neither alter the court's

analysis.  The former—the Statement of Interest filed by the United States in *Bolton v. Gallatin*

*Center for Rehabilitation & Healing, LLC*—took "no position" on the question "whether the

[PREP] Act applies to any particular claim alleged in Plaintiff's Complaint" in the case.

Statement of Interest of the United States, *Bolton v. Gallatin Center for Rehab. & Healing, LLC*,

---

[7] *Garcia* applied *Chevron* deference to HHS Advisory Opinion 21-01.  But the majority of other courts to consider the deference owed to HHS Advisory Opinion 21-01 have declined to apply *Chevron* deference.  *See Maglioli*, 16 F.4th at 403–05; *Dupervil v. All. Health Operations, LCC*, 516 F. Supp. 3d 238, 252 (E.D.N.Y. 2021) ("[E]ven assuming that Congress intended to delegate authority to the Secretary and HHS's Office of the General Counsel generally to make rules carrying the force of law, the Office of the General Counsel interpretation relied upon by Defendants here explicitly was not promulgated in the exercise of that authority and is not entitled to *Chevron* deference." (internal quotation marks omitted)); *Iskowitz v. Northridge Subtenant, LLC*, No. 21-cv-1108-GPC-MDD, 2021 WL 5822610 at *5–6 (S.D. Cal. Dec. 8, 2021) (declining to apply *Chevron* deference to HHS Advisory Opinion 21-01); *Khalek v. S. Denver Rehab.*, ___ F. Supp. 3d ___, No. 20-cv-02240-RBJ, 2021 WL 2433963, at *5 (D. Colo. June 11, 2021) (finding HHS Advisory Opinion 21-01 is "not owed *Chevron* deference"); *Gwilt v. Harvard Square Ret. & Assisted Living*, 537 F. Supp. 3d 1231, 1242 n.2 (D. Colo. 2021) (finding *Dupervil*'s analysis persuasive).

No. 3:20-cv-00683 (M.D. Tenn. Jan. 19, 2021), ECF No. 35.  And, it provided no analysis or argument about the scope of the PREP Act's remedial remedy or what constitutes administration or use of a covered countermeasure.  *See id.*  The second federal authority defendants cite—the Fifth Amendment to the PREP Act—does not change the definition of "administration or use" or "covered countermeasure."  *See* 86 Fed. Reg. 7872.  It doesn't alter the court's analysis either.

### D.   Whether Plaintiff's Claims Present an Embedded Federal Question Under *Grable*

As an alternative and independent basis for federal jurisdiction, defendants argue that removal is proper because plaintiff's state law claims raise "significant federal issues" within the meaning of *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). Doc. 28 at 19–20.  In some cases, "federal-question jurisdiction will lie over state-law claims that implicate significant federal issues."  *Grable*, 545 U.S. at 312.  Defendants assert that federal jurisdiction is proper here because plaintiff's state law claims implicate a significant federal issue:  the PREP Act.  *Id.*  The court rejects this argument as well.

Under *Grable*, a federal question is embedded in plaintiff's state law claims if the federal question is:  "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).  The mere possibility that a party will assert a defense that presents an embedded federal question is not enough.  *Devon Energy Prods. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1209–12 (10th Cir. 2012).  Plaintiff's claims fail the first step of the test.

Plaintiff's claims do not necessarily raise a federal issue because the PREP Act operates as a source of an affirmative defense.  *See Becker v. Ute Indian Tribe of the Uintah & Ouray Reservation*, 770 F.3d 944, 947–48 (10th Cir. 2014) (discussing the "narrow boundaries of the

substantial question category" of "arising under" jurisdiction and holding that plaintiff's "federal issues are merely federal defenses, which" fail to provide "a sufficient basis from which to conclude that the questions are 'necessarily raised[ ]'" and "do not give rise to federal question jurisdiction under 28 U.S.C. § 1331"); *see also Maglioli*, 16 F.4th at 413 (rejecting defendants' embedded federal question theory based on *Grable* because the PREP Act is not "necessarily raised"—it's a defense); *Dupervil*, 516 F. Supp. 3d at 259 (holding no embedded federal question when "the PREP Act, a statute affording immunity, is not an essential element of any of Plaintiff's claims"). None of plaintiff's claims invoke the PREP Act and the PREP Act provides no essential element of plaintiff's claims. *See* Doc. 1-1 at 12–21 (Pet. ¶¶ 43–83). Indeed, "no embedded federal issues exists because the Court could ignore entirely the PREP Act in determining whether [plaintiff] established prima facie state-law claims[.]" *Bolton v. Gallatin Ctr. for Rehab. & Healing, LLC*, 535 F. Supp. 3d 709, 711 (M.D. Tenn. 2021). Several other courts have addressed this issue and similarly concluded that the *Grable* doctrine does not provide federal courts with subject matter jurisdiction over claims like plaintiff's. *See Maglioli*, 16 F. 4th at 413; *see also Bolton*, 535 F. Supp. 3d at 717–18; *Dupervil*, 516 F. Supp. 3d at 257–59; *Rae by & through Montisano v. Anza Healthcare Inc.*, No. 21-CV-287-DMS, 2021 WL 2290776, at *3 (S.D. Cal. June 4, 2021); *Robertson*, 523 F. Supp. 3d at 1286–87; *Mackey*, 2021 WL 5050292, at *7; *Estate of Cowan v. LP Columbia KY, LLC*, 530 F. Supp. 3d 695, 704–05 (W.D. Ky. 2021) (collecting cases).

Also, the court notes that the Fourth Amendment to the Declaration and HHS Advisory Opinion 21-01 opine that the *Grable* doctrine applies to PREP Act cases. 85 Fed. Reg. at 79,194, 79,197; Dep't Health & Human Servs., Advisory Opinion 21-01 on the Public Readiness and Emergency Preparedness Act Scope of Preemption Provision (Jan. 8, 2021), at 4–5,

https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/2101081078-jo-advisory-opinion-prep-act-complete-preemption-01-08-2021-final-hhs-web.pdf.  Specifically, the Fourth Amendment to the Declaration provides that there exist "substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of *Grable* . . . in having a unified, whole-of-nation response to the COVID-19 pandemic[.]"  85 Fed. Reg. at 79,197.  Also, HHS Advisory Opinion 21-01 declares:  "ordaining the metes and bounds of PREP Act protection in the context of a national health emergency necessarily means that the case belongs in federal court."  Dep't Health & Human Servs., Advisory Opinion 21-01 on the Public Readiness and Emergency Preparedness Act Scope of Preemption Provision (Jan. 8, 2021), at 5, https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/2101081078-jo-advisory-opinion-prep-act-complete-preemption-01-08-2021-final-hhs-web.pdf.

The Secretary's statement ably identifies the federal interests underlying the PREP Act. But neither the Fourth Amendment to the Declaration nor HHS Advisory Opinion 21-01 address whether the PREP Act is "necessarily raised" by claims such as the ones made here.  *See Estate of Cowan*, 530 F. Supp. 3d at 704–05.  The court finds the *Grable* analysis in both documents unpersuasive as it applies to the issues of subject matter jurisdiction in federal court.  *See Dupervil*, 516 F. Supp. 3d at 259 (finding HHS Advisory Opinion 21-01 "unhelpful" and declining to accept the Opinion's "effective rewriting of . . . principles of subject-matter jurisdiction"); *see also Robertson*, 523 F. Supp. 3d at 1287 (acknowledging the Fourth Amendment to the Declaration's statement about *Grable* but concluding that "the significance of the COVID-19 pandemic and the importance of uniform interpretation of the PREP Act do[] not create federal subject-matter jurisdiction").

The *Grable* doctrine does not provide this court with subject-matter jurisdiction.

**IV.    Conclusion**

When it enacted the PREP Act, Congress created certain federal remedial rights.  But plaintiff's claims here do not fall within the scope of those remedies.  So, this case is not an action where one of plaintiff's claims, "even if pleaded in terms of state law, is in reality based on federal law."  *Anderson*, 539 U.S. at 8.  The doctrine of "complete preemption" does not apply.  Since no other basis for subject matter jurisdiction presents itself, the court lacks authority to hear this case and, as it must, the court remands the case to the state court where it originated.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion to Remand (Doc. 22) is granted.  The court remands this case to the District Court of Johnson County, Kansas.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendants' Motion to Dismiss (Doc. 6) is dismissed because the court lacks subject matter jurisdiction to decide that motion.  This ruling does not affect defendants' rights, whatever they are, to present a similar motion once state court proceedings resume.

**IT IS SO ORDERED.**

**Dated this 20th day of January, 2022, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
